# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2010

No. 09-10350
Summary Calendar

Lyle W. Cayce
Clerk

TRACI ROBERTS,

Plaintiff-Appellant

v.

UNITRIN SPECIALTY LINES INSURANCE CO; TRINITY UNIVERSAL INSURANCE COMPANY; UNITRIN INC; JOHN MULLEN; DAN MALONEY; JAMES DICKEY; LAWRENCE KUFEL; UNITRIN COUNTY MUTUAL INSURANCE CO,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-380

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Traci Roberts, acting pro se, filed an in forma pauperis (IFP) complaint against her former employer, several of its related companies, and several of its employees, alleging that they discriminated and retaliated against her in violation of Title VII of the Civil Rights Act, the Americans with Disabilities Act

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(ADA), the Family and Medical Leave Act (FMLA), the Employee Retirement Income Security Act (ERISA), the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), and numerous Texas statutes. The district court granted defendants' motion for summary judgment, dismissed Roberts's claims, and denied her request to proceed IFP on appeal, certifying that the appeal was not taken in good faith. She now moves to proceed IFP in this court. We DENY IFP status, DISMISS the appeal as frivolous, and DENY all other motions.

## I. Factual Background

Roberts began working for Unitrin on September 8, 2003, as a marketing manager; shortly after she arrived at Unitrin, James Dickey became her supervisor. In April or May 2004, Roberts was assigned to correct problems with the "Texas Contract Project," which was an ongoing, highly visible project that had been rife with problems. Roberts contends that her supervisors blamed her for the failure of the project, although she allegedly was not responsible for its continued failures. On April 15, 2004, Cliff Shumway, a sales manager, allegedly "verbally assaulted" her; she reported the incident to Dan Maloney, vice president of human resources, on April 29, 2004. On May 24, 2004, Shumway again allegedly verbally attacked her. On May 29, 2004, Dickey allegedly transferred 50% of Roberts's job duties to Mike Bascue; Roberts did not suffer any loss of pay as a result.

Roberts further alleges that on June 4 and 15, 2004, Roberts injured her back at work. At some point in early June 2004, Dickey removed a project from Roberts, and Roberts heard Shumway say he won a bet that the project would be removed from her. On June 21, 2004, Roberts sent an email to Maloney complaining about the work environment. On June 23, 2004, Dickey, Larry Kufel, and Shumway made a presentation to management blaming Roberts, and Dickey interrogated her and brought her to tears. On July 7, 2004, Dickey issued a disciplinary action notice to Roberts, requiring her to complete seven large projects by July 30, 2004, or be terminated. Roberts worked from home

due to pain on July 23, 2004, and never returned to work. She began receiving short-term disability benefits on July 26, 2004, and thereafter her ability to check voicemail and emails was cut off, her telephone extension was deleted, and her direct reports were transferred. In January 2005, Unitrin notified Roberts that her short-term leave would expire on January 21, 2005, and that she was required to return to work by January 24, 2005, or she would be terminated. Roberts did not return to work and produced a doctor's note to the effect that she was unable to return to work. Unitrin contends that she was terminated on January 31, 2005 for failure to comply with its return to work policy following a period of short-term disability.

## II.  Standard of Review

Roberts's motion to proceed IFP on appeal is construed as a challenge to the district court's certification decision. *Baugh v. Taylor*, 117 F.3d 197, 202 (5th Cir. 1997). Thus, her request "must be directed solely to the trial court's reasons for the certification decision." *Id.* This court's inquiry into whether the appeal is taken in good faith "is limited to whether the appeal involves legal points arguable on their merits (and therefore not frivolous)." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (internal quotation marks and citation omitted).

This court reviews the grant of summary judgment de novo. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Under the version of Rule 56 in effect at the time of the district court's judgment, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2).[1]

---

[1]   Effective December 1, 2010, Rule 56 was amended.

No. 09-10350

### III. Discussion

A.    Title VII Claims

1. Time Bar and Continuing Violations Doctrine

Roberts first claims that the district court erred in determining that conduct that occurred prior to June 18, 2004, was time barred because it occurred greater than 300 days from the date that Roberts filed her complaint with the EEOC. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *see also Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998). She alleges that that conduct is not time barred based on the continuing violations doctrine.

The continuing violations doctrine is an equitable doctrine that extends the limitations period on otherwise time-barred claims when the unlawful employment practice in question "manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). This court has noted that:

> the core idea [of the continuing violation theory] is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.

*Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir. 1985) (internal citation and quotation omitted).

The parties dispute here whether Roberts raised that argument in the district court. Regardless of whether it was properly raised in the district court, the continuing violations doctrine is not applicable here because Roberts acknowledged that she was aware of her Title VII rights on July 26, 2004, when she signed a document entitled "Decision Not to File or to Drop Issues" after being interviewed by an EEOC investigator. Thus, defendants' alleged

discriminatory practices did not manifest themselves over time, and the continuing violations theory is therefore not relevant here. *See Pegram*, 361 F.3d at 279.

Roberts's remaining Title VII discrimination claims are without merit because she has failed to set forth a prima face case of discrimination with respect to all conduct other than her termination, and with respect to her termination, she has failed to show that defendants' reason for her discharge, her failure to return to work after her short-term leave expired, was a pretext.

2. Absence of Evidence That Reason for Termination Was Pretextual

Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Absent direct proof of discrimination, a plaintiff may assemble proof via circumstantial evidence using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "First, the plaintiff must establish a prima facie case of discrimination. Second, the employer must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the employer is only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal quotation marks and citations omitted). If the employer meets its burden of production, the plaintiff must then offer evidence to create a genuine issue of material fact as to whether the nondiscriminatory reason is a pretext or is only one of the reasons for the employer's conduct and the plaintiff's protected characteristic is another motivating factor. *Burrell v. Dr Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). A reason is pretextual if it is false, "unworthy of credence," or otherwise unpersuasive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

To establish a prima facie case of discrimination, a plaintiff must show that she is a member of a protected class; is qualified for the job; suffered an

adverse employment action by the employer; and was either replaced by someone outside her protected group or received less favorable treatment than a similarly situated individual outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

With respect to conduct other than her termination, Roberts has failed to show that she suffered an adverse employment action because none of the post-June 18, 2004 conduct constituted an "ultimate employment decision," which includes hiring, granting leave, discharging, promoting, or compensating. *See Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999); *see also Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (noting that "removal of employee's name from letterhead, ostracism by coworkers, and loss of some job duties" are not ultimate employment decisions).

With respect to her termination, assuming for the sake of argument that Roberts has set forth a prima facie case of sex discrimination,[2] Roberts has not shown that Unitrin's reason for her termination was a pretext.

Specifically, the record reflects that Unitrin's policy was to terminate any employee who did not return to work after his or her qualified leave had expired and that it consistently enforced that policy. The record also reflects that Roberts was terminated because she failed to return to work after her short-term disability leave expired and that Roberts admitted that she was unable to return to work after her leave expired. Roberts has set forth no evidence that Unitrin's reason for her termination was false, unworthy of credence, or otherwise unpersuasive, *see Reeves*, 530 U.S. at 147, or that her sex was a motivating factor in her termination. *See Burrell*, 482 F.3d at 412.[3]

---

[2] Unitrin argues that Roberts was not replaced with someone outside the protected class. Because we conclude that Roberts failed to establish that Unitrin's proffered reason for discharging her was pretextual, we need not reach this issue.

[3] Roberts cites a remote-in-time statement by Dickey that he liked to have men in managerial positions as support for her claim of sex discrimination. However, because Roberts

3. Constructive Discharge and Retaliation

Roberts's constructive discharge claim is without merit because she was terminated; she did not resign. *See Brown v. Bunge Corp.* 207 F.3d 776, 782 (5th Cir. 2000) ("When an employee resigns, he may satisfy the discharge requirement by proving constructive discharge.").

Roberts's Title VII retaliation claims also fail. To establish a prima facie case of retaliation, "a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). With respect to the third element, the plaintiff must demonstrate that the defendant knew about her protected activity. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 884 (5th Cir. 2003). The causation element may be proved by temporal proximity between the protected activity and the adverse employment action when they occur "very close" in time. *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (internal quotation and citation omitted).

An adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted). A Title VII retaliation case is also subject to the burden-shifting framework set forth in *McDonnell Douglas*. *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007).

The only adverse employment action that Roberts has identified is her termination; the transfer of some of her job duties to Bascue is not an adverse employment action under these circumstances, particularly in light of the fact

---

was ultimately terminated by the human resources department for failing to return to work, rather than by Dickey for her performance deficiencies, we need not address whether this alleged statement provides evidence of Dickey's discriminatory intent.

that Roberts acknowledges that she was overworked prior to the transfer. *Cf. Stewart*, 586 F.3d at 332–33 (evaluating whether allegedly retaliatory acts were "adverse" in light of surrounding facts and noting that "'the significance of any given act of retaliation will often depend upon the particular circumstances'") (citing and quoting *White*, 548 U.S. at 69, 71). Assuming for the sake of argument that she engaged in protected activity (1) when she reported Shumway's assault to Maloney on April 29, 2004; (2) when she reported Shumway's assault to Maloney on June 21, 2004, (3) when she reported her back injury to Dickey on June 23, 2004, and (4) when she reported to Dickey regarding Shumway's bet about her, she has failed to establish a causal connection between the protected activities and her termination. The record reveals that Roberts was terminated on January 31, 2005. Thus, she was terminated approximately nine months after she alleges that she first complained about Shumway and approximately eight months after she alleges that she next complained about Shumway, complained to Dickey regarding her back injury, and complained about Shumway's bet. The several-month spans between the alleged protected activities and her termination negate any argument that a causal connection existed between the activities and the termination. *See Washburn*, 504 F.3d at 511.

4. Hostile Work Environment

Roberts's claims that she was subjected to a hostile work environment when Dickey allegedly stated that the marketing department would be better off without females; when Dickey hired Bascue to replace her; when Shumway verbally attacked her twice and acted violent toward other females; when Dickey and Shumway referred to her as "poor Traci"; when Dickey, Shumway, and Kufel blamed her for the problems with the Texas Contract Project; and when Dickey gave her "physically demanding workloads" and threatened to fire her are without merit.

To prevail on a hostile work environment claim, Roberts must establish that: "(1) [she] belongs to a protected class; (2) was subjected to unwelcome sexual harassment; (3) the harassment was based on [her] sex; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action." *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 523 (5th Cir. 2003). To affect a term, condition, or privilege of employment, the harassing conduct "'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks omitted).

At the very least, Roberts has failed to establish that any harassment was based on her sex. *See Mota*, 261 F.3d at 523. She has established nothing more than "simple teasing, offhand comments, and isolated incidents" that do not rise to the level of actionable harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).[4]

B. ADA Claims

Roberts has not shouldered her burden with respect to her ADA claims. To establish a prima facie case of discrimination under the ADA, a plaintiff must establish the following: (1) she suffers from a disability; (2) she is qualified for the job despite the disability; (3) she was subjected to an adverse employment action due to the disability; and (4) she was treated less favorably than non-disabled employees. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). However, even assuming that one has a disability, to be a qualified individual with a disability, the plaintiff must be "an individual with a disability who, with or without reasonable accommodation, can perform the

---

[4] The Supreme Court in *Faragher* appended the important caveat "unless extremely serious" to this list of non-actionable conduct. 524 U.S. at 788. The conduct of which Roberts complains is not, under our precedent, "extremely serious."

9

essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the ADA, a covered employer must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

The record in the instant case reflects that Roberts has not established that she is a qualified individual with a disability because she has not shown that she can perform the essential functions of her job with or without reasonable accommodations. On January 10, 2005, her doctor stated that she was "unable to function at work," and "when she can return to work is unknown - certainly not for another 4 to 6 weeks probably." Moreover, on January 20, 2005, Roberts conceded that she could not return to work. Roberts has produced no evidence showing that she was able to perform the essential functions of her job as marketing manager with or without reasonable accommodations; thus, even if she had a disability, she has not shown that she is a qualified individual with a disability. *See, e.g.*, *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (noting that the ability to appear for work is an essential element of any job and that a "reasonable accommodation" does not require an employer to wait an indefinite period of time for the employee's medical condition to improve).

Roberts's ADA retaliation claim is likewise without merit. To make a prima facie case of retaliation under the ADA, Roberts must demonstrate that: (1) she engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Even if Roberts has satisfied the first and second elements of her prima facie case of ADA retaliation, her claim fails because the record establishes that

Roberts was terminated for her failure to return to work after her leave expired. Thus, she cannot show a causal connection between her participation in a protected activity and her termination. *Id.*

C.  FMLA Claims

Roberts alleged that her FMLA rights were violated because she was denied FMLA leave after she was eligible for and requested it.  The FMLA entitles eligible employees to 12 workweeks of leave in any 12-month period for various qualifying events, including a "serious health condition that makes the employee unable to perform the functions" of her position.  29 U.S.C. § 2612(a)(1)(D).  An employee is "eligible" for FMLA leave if the employee has been employed "(i) for at least 12 months by the employer . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

The record reveals that when Roberts first took leave on July 26, 2004, she had only been employed by Unitrin for 11 months; thus, she was not eligible for FMLA leave.  *See id.*  When Roberts allegedly requested FMLA leave in December 2004, she was eligible for FMLA leave, *see id.*, but she had already been on leave for greater than 12 weeks, or for approximately 20 weeks.  Thus, she was not entitled to additional FMLA leave at that point.  *Cf. Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 96 (2000).

Roberts's FMLA retaliation claim likewise fails.  Retaliation claims under the FMLA are analyzed using the *McDonnell Douglas* burden-shifting framework.  *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).  To make a *prima facie* case of retaliation under the FMLA, the plaintiff must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not required leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave."  *Id.* (citation omitted).  Once the plaintiff makes a *prima facie* showing, the burden

shifts to the defendant "to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action." *Id.* If the defendant makes such a showing, the plaintiff "must show by a preponderance of the evidence that [the defendant's] reason is a pretext for retaliation." *Id.*

Roberts's FMLA retaliation claims are without merit because, as shown above, at the very least, she has failed to show that she was entitled to FMLA leave. *See id.* Thus, she has failed to establish a prima facie case for FMLA retaliation. *See id.*

D.   ERISA,[5] HIPAA,[6] and COBRA[7] Claims

Roberts claims that her ERISA, HIPAA, and COBRA rights were violated because Unitrin retaliated against her by cancelling her COBRA benefits after Unitrin "was served with" her EEOC charge.

"To establish a *prima facie* case of discrimination under ERISA, a plaintiff must establish that his employer [discriminated against him] in retaliation for exercising an ERISA right or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001). "An essential element of a [29 U.S.C. § 1140] claim is proof of [the] defendant's specific discriminatory intent." *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 209 (5th Cir. 1995).

Roberts cannot prevail on this claim because she has failed to establish that defendants acted with specific discriminatory intent. When her benefits were cancelled in June and July 2005, she was no longer employed at Unitrin, and her benefits were promptly reinstated. Moreover, Roberts has not shown any causal connection between defendants' alleged receipt of her EEOC charge

---

[5] 29 U.S.C. §§ 1001 *et seq.*

[6]  Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936.

[7] Pub. L. No. 99-272, 100 Stat. 82.

and the cancellation of her benefits because she has failed to show that the person who cancelled her benefits had knowledge of her EEOC charge. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (holding that a plaintiff can establish a causal link by showing that "the employer's decision . . . was based in part on knowledge of the employee's protected activity") (internal quotation marks and citation omitted).

Roberts's HIPAA claims are without merit because HIPAA does not provide her with a private cause of action. *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006).[8]

E.     Motion to Reconsider and Motion for Sanctions

A review of the record establishes that the district court did not abuse its discretion by denying Roberts's motion for reconsideration, which attached copies of "newly discovered" evidence or evidence that she inadvertently failed to attach to her opposition to defendants' motion for summary judgment, because she failed to demonstrate that "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *See Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696–97 (5th Cir. 2003).

Roberts's complaint that the district court improperly sanctioned her because she was punished for a mistake "that had no ill intent" regarding the incorrect date stamp on one of her filings in the district court is without merit.

A district court's sua sponte imposition of sanctions is reviewed for an abuse of discretion. *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999). "Generally, an abuse of discretion only occurs where no reasonable person could

---

[8] While 42 U.S.C. § 1320d-5 has been amended since our decision in *Acara*, that amendment added only authorization for state attorneys general to sue for violations of HIPAA. *See* American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 13410, 123 Stat. 115, 271–76. Our holding in *Acara* that no private right of action exists under the statute is, if anything, strengthened by this amendment.

take the view adopted by the trial court." *Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 578 (5th Cir. 2002) (internal quotation marks and citations omitted).

The district court sanctioned Roberts after hearing live testimony that one of Roberts's filings in the district court was date stamped June 13, 2008 (a filing deadline imposed by the district court), but that that document was not found in the court's drop box until June 17, 2008. Roberts explained that the date stamp did not correspond with the date that the filing was placed in the drop box because after date stamping the document on June 13, 2008, Roberts's sister discovered that Roberts had not signed the pleading; her sister therefore did not drop the pleading in the drop box until June 17, 2008, after Roberts signed it. Based on this testimony, the district court did not abuse its discretion in sanctioning Roberts.

F. Other Motions

Roberts has failed to present any argument in support of her claims that the district court erred in denying her motion for a continuance of the summary judgment hearing, her motion requesting pretrial discovery management, and the agreed motion to continue and to modify the scheduling order; she has therefore failed to adequately brief these arguments. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

With respect to Roberts's motion to compel discovery, she has failed to show that the district court, which denied her discovery motion because defendants had not been properly served with the discovery, abused its discretion. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817 (5th Cir. 2004) ("We review a district court's discovery rulings, including the denial of a motion to compel, for abuse of discretion. We will affirm such decisions unless they are arbitrary or clearly unreasonable." (internal quotation marks and footnote omitted)). Likewise, with respect to Roberts's motion to modify the

scheduling order, she has failed to show that good cause existed for modifying that order; accordingly, the district court did not abuse its discretion in denying that motion. *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535-36 (5th Cir. 2003).

## IV.  Conclusion

Roberts's appeal does not involve legal points that are arguable on the merits, *see Howard*, 707 F.2d at 220, and her IFP motion is therefore denied. *See Baugh,* 117 F.3d at 197.  Because the resolution of Roberts's challenge to the district court's certification order requires resolution of the merits of her appeal, the appeal is dismissed as frivolous. *See id.*; *see also* 5TH CIR. R. 42.2.  Roberts's motions for appointment of counsel, for a stay of the sanctions order, for free transcripts, and for referral to the appellate mediation program are denied. Defendants' motion to dismiss is denied as moot.

MOTIONS DENIED; APPEAL DISMISSED.