# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 14, 2012

No. 11-60541

Lyle W. Cayce
Clerk

ROGER THORSON,

Plaintiff-Appellant

v.

CHRISTOPHER EPPS, Commissioner of the Mississippi
Department of Corrections; LAWRENCE KELLY,
Superintendent of the Mississippi State Penitentiary
at Parchman; ATTORNEY GENERAL JIM HOOD,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, GARZA, and PRADO, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Roger Thorson ("Thorson"), an inmate on death row at the Mississippi State Penitentiary in Parchman, Mississippi, challenges the district court's grant of summary judgment concerning his claim that Mississippi's lethal injection procedures violate his Eighth Amendment right to be free from cruel and unusual punishment. Because *Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520 (2008), precludes the remedy sought, we **AFFIRM**.

No.  11-60541

## BACKGROUND

Appellant Thorson brought a 42 U.S.C. § 1983 action to enjoin the use of Mississippi's current execution procedures against him.  He contended that the lack of specific instructions concerning some aspects of the protocol creates the potential for an improperly anesthetized prisoner to experience the pain of the lethal drugs while still conscious.  The district court granted summary judgment on two grounds.  First, Thorson failed to exhaust his available remedies through Mississippi's Administrative Remedy Program ("ARP"), as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (2006).  Second, ruling on the merits, the court held, *inter alia*, that even if some of Mississippi's lethal injection protocol relies on custom and practice, rather than written documents, a lack of evidence linking the unwritten protocol to the requisite risk of harm prevented it from being unconstitutional.  Since Thorson's claim failed on the merits, the claim was dismissed with prejudice.  Thorson timely appealed.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.  *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).  Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009) (quoting *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)).  The evidence in the record is considered in a light most favorable to the non-moving party and all reasonable inferences are drawn in favor of the non-moving party.  *Id.*

No. 11-60541

## DISCUSSION

### I.    Failure to Exhaust.

Thorson acknowledges that he failed first to assert this claim in the prison's administrative process as required by the PLRA. *See Nelson v. Campbell*, 541 U.S. 637, 650, 124 S. Ct. 2117, 2126 (2004) (noting that § 1983 claims concerning a state's execution procedures must be exhausted using state administrative remedies pursuant to the PLRA); *White v. Johnson*, 429 F.3d 572, 574 n.1 (5th Cir. 2005). Thorson asserts various excuses for his default, none of which are compelling under current case law. In both the district court and this court, the state has consistently urged the "mandatory" nature of the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S. Ct. 2378, 2382 (2006). The district court's summary judgment ruling acknowledged and affirmed the exhaustion requirement.

Nevertheless, the court also ruled on the merits of Thorson's claim because the state sought summary judgment on the merits in a motion fully briefed and supported by evidence. The court had originally denied the state's motion but reconsidered after giving the plaintiff an opportunity for discovery and submission of his evidence. On appeal as its principal argument, the state urges this court to affirm the district court's merits decision.

Under these circumstances, where the only issue presented to the court is a clearly focused § 1983 constitutional claim, where the state moved for summary judgment on the merits[1] (in addition to invoking PLRA exhaustion), where the parties engaged in discovery, and where the purposes of PLRA exhaustion would be confounded by requiring administrative exhaustion at this

---

[1] We recognize that a district court is expressly authorized to dismiss a prisoner's § 1983 claim before service of process on the defendants (and without exhaustion of remedies) if the claim is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c) (2006).

3

stage, we will rule on the merits.  In regard to the last point, the Supreme Court has articulated three goals of administrative exhaustion: protecting the state agency's authority; promoting efficiency in the resolution of prisoner claims; and generating a helpful record for judicial review.  *Woodford*, 548 U.S. at 89, 126 S. Ct. at 2385 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S. Ct. 1081, 1086 (1992)).  Because the state opted to invoke the court's processes here, and because we agree that Thorson presented no genuine issue of material fact, no purpose is served by pursuing exhaustion.  This court can affirm summary judgment on any basis that was presented to and considered by the district court.  *FDIC v. Laguarta*, 939 F.2d 1231, 1240 (5th Cir. 1991).

## II.    Mississippi's Lethal Injection Procedures.

This suit is strikingly similar to previous § 1983 challenges to capital punishment protocols.  The standard for these cases is *Baze*.  Starting from the principle that capital punishment is constitutional and, therefore, must be workable, the Supreme Court held that the Eighth Amendment does not prohibit "the possibility of pain" but rather "wanton exposure [of the condemned] to 'objectively intolerable risk.'"  *Baze*, 553 U.S. at 61–62, 128 S. Ct. at 1537 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 & n.9, 114 S. Ct. 1970, 1983 (1994)).  The petitioners there claimed a significant risk existed that Kentucky's death penalty procedures would not be followed.  The Court clarified that, "to prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'"  *Id.* at 50, 1531 (quoting *Farmer*, 511 U.S. at 842, 846 & n.9, 114 S. Ct. at 1981, 1983).  The nature of a § 1983 claim thus forces the prisoner to show more than just the potential for something to go wrong.[2]

---

[2] "Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of

No.  11-60541

*Baze* was not meant to be a blueprint; it was meant to set out flexible parameters for handling executions.  *See id.* at 48–49, 1530; *see also Raby v. Livingston*, 600 F.3d 552, 560 (5th Cir. 2010) ("Raby misreads *Baze* when he suggests that it could only foreclose relief here if the lethal injection practices actually implemented in Kentucky and Texas were identical in all respects.").  In the instant case, Mississippi's protocol fits comfortably within these parameters because there is no objectively intolerable risk of harm.  The Mississippi Department of Correction ("MDOC") employs a method of execution substantially similar to that used in Kentucky and to the Texas protocol this court approved in *Raby*.  Mississippi's written instructions detail virtually every step related to an execution.  Those steps not written are systematically ensured by conscientious training, repeated practice runs, and the experience of the participants relied on by the prison.  Because Mississippi implements its procedure in substantially the same manner as Kentucky and Texas,[3] any unwritten aspects of the protocol are of no constitutional moment here.

Thorson nevertheless contends that Mississippi's protocol *could* result in cruel and unusual punishment.  Specifically, it is argued that the lethal injection protocol does not expressly require medical training for members of the execution team; there is no contingency plan for problematic IV access; sedation of the prisoner is inadequately monitored; there is no description of drug administration after IV placement; the protocol deviates from acceptable anesthesiology standards; and potential drug interaction issues are not addressed.  These alleged inadequacies, Thorson contends, open the door to an Eighth Amendment violation.  Mere conjecture, though, does not qualify as an

---

harm' that qualifies as cruel and unusual." *Baze*, 553 U.S. at 50, 128 S. Ct. at 1531.

[3] Though Texas recently adopted a one drug protocol—also acceptable under the flexible *Baze* standard—the method at issue here exactly parallels the one cleared for use in *Raby*.

No. 11-60541

objectively intolerable risk, and an examination of the facts nullifies these concerns. The record—including Mississippi's written protocol, and affidavits from the Superintendent of the prison and his Deputy, who have attended each execution in Mississippi during the past decade—shows a degree of training and familiarity with the process that militates against a successful § 1983 claim.

To begin, even absent a written instruction that IV's must be placed and the injections administered by medical professionals, Mississippi takes the precautionary step of using highly trained paramedics. Given the State's incentive to carry out executions efficiently and without incident, it is unsurprising that the practice is to employ only trained professionals to administer the drugs—even though it is not required by either the Constitution or Fifth Circuit precedent.[4] This expertise also answers Thorson's argument concerning a lack of contingency plans for problematic IV placement. Trained professionals know how to establish reliable ports for intravenous fluids, and the pain worried about here is not the multiple attempts that could be necessary to find a proper vein. As in *Raby*, Thorson fails to "show a connection between the difficulty in initially establishing the IV and the risk that the first drug will not be administered properly." *Raby*, 600 F.3d at 558. In the event that such placement is actually impossible, the other steps of the protocol leading up to execution could not be fulfilled. Because this would shut down the process altogether, the argument that Mississippi must have a detailed "Plan B"—whatever that might be—is groundless, and purely hypothetical.

*Raby* goes further in answering the other issues asserted here. Under Texas guidelines, the warden stands near the prisoner to monitor consciousness after the delivery of the sodium thiopental. This court held that, based on *Baze*, such "lay-monitoring" was not insufficient; no medical equipment or anything

---

[4] *See Kelly v. Lynaugh*, 862 F.2d 1126, 1135 (5th Cir. 1988) (rejecting the argument that the lethal injection is cruel and unusual when administered by an unqualified person).

beyond a visual monitoring is necessary. *Id.* at 559 ("*Baze* forecloses a holding that any type of additional observation (*i.e.*, EKG, eyelash testing, pinching) is required by the Constitution."). Following that precedent, Thorson's inadequate monitoring claim is also defeated.

Finally, the argument that MDOC's protocol does not conform to anesthesiology standards is merely a covert criticism of nationwide execution protocols and is without merit as well. It is irrelevant that the anesthesia amount in this case (2.0 grams of sodium thiopental) does not exactly match the protocol in *Baze* (3.0 grams). Mississippi's amount is, in fact, five to eight times the dosage required. This extreme dosage also precludes the possibility of an adverse drug interaction—yet the state makes inquiries into this as well. The steps taken by the State are thus reasonably calculated to achieve its goal. There is no evidence that forcing Mississippi to copy Kentucky exactly would "*significantly* reduce a *substantial* risk of severe pain." *Baze*, 553 U.S. at 52, 128 S. Ct. at 1532 (emphases added). Again, *Baze* was not meant to be a blueprint of the only sanctioned lethal injection protocol and should not be read as such.

Mississippi's written protocol lists the drugs and amounts to be administered as well as the order in which each syringe is to be administered. The Chronological Record of Execution clearly lists the steps to be taken, including an injection of normal saline between each drug in order to flush the line. This detailed program, rehearsed multiple times prior to each execution, evidences a procedure that, in fact, is essentially the same as that of Texas (*Raby*) and Kentucky (*Baze*) and that reduces the serious risk of harm that could be suffered by a condemned prisoner.

Mississippi has chosen, by both method of execution and the procedure for administration of the lethal injections, to alleviate cruelty and reduce "harm" in capital punishment. "Given what our cases have said about the nature of the

risk of harm that is actionable under the Eighth Amendment, a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Baze*, 553 U.S. at 51, 128 S. Ct. at 1531.

An additional, salient comparison with *Raby* must be noted. In that case, Raby attempted, unsuccessfully, to prove the inadequacy of Texas's lethal injection protocol with evidence of alleged errors during executions that had been carried out under the protocol. Here, Thorson offered no evidence of any instance of maladministration or suffering during any of more than a dozen executions conducted in Mississippi under the protocol he attacks. Yet such evidence, if it existed, would have been readily accessible through eyewitness accounts. Thorson's theoretical complaint necessarily fails under *Raby*.

Thorson's ultimate argument is that Mississippi's failure to dictate every execution detail in writing *could* cause a constitutional problem. This misses the point. He has adduced no evidence that requiring the State to expound further on what is already written, along with what is already being done, will "in fact significantly reduce a substantial risk of severe pain." *Baze*, 553 U.S. at 52, 128 S. Ct. at 1532. Furthermore, nothing in the record points toward a substantial risk of serious harm by the MDOC in carrying out executions; mere speculation cannot rise to the level of an objectively intolerable risk.

## CONCLUSION

For these reasons, the district court's summary judgment is **AFFIRMED**.