# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 18, 2025

Lyle W. Cayce
Clerk

No. 24-30637

Nathanial Webber,

*Plaintiff—Appellant*,

*versus*

Leson Chevrolet Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
Civil Action No. 2:22-CV-910

Before King, Jones, and Wilson, *Circuit Judges*.
Per Curiam:[*]

After his termination, Nathanial Webber sued his former employer, Leson Chevrolet. Webber had previously complained to management about racist social media posts by a coworker, the son of the dealership's owner. In his lawsuit, Webber alleged workplace harassment and wrongful termination under Title VII, as well as claims under state law. The district court granted summary judgment, holding that the state law claims were time-barred and

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

that Webber failed to plead facts sufficient to sustain his Title VII claims. The district court also upheld sanctions against Webber's counsel imposed by the magistrate judge. Webber now appeals the summary judgment and the sanctions against his counsel. We affirm as to both.

## I.

In September 2019, Nathanial Webber, an African American, was hired as a mechanic by Leson Chevrolet Company (LCC). LCC is a family-owned dealership operated by Lisa Rebowe. Webber was hired by service manager Timothy Colson, who supervised Webber throughout his time at LCC. During Webber's employment, Lisa Rebowe's son, Leson Rebowe, was a trainee manager in the sales department. Until June 2020, Webber did not report any harassment or discrimination at LCC.

On June 4, 2020, a social justice protest was held at the Jefferson Parish Sheriff's Office, next door to the dealership. Webber participated in the protest. That same day, Leson Rebowe circulated several offensive posts on social media that encouraged violence against protestors. By June 5, Webber had learned of these posts and expressed his concern to Colson and Johnny Brumfield, another LCC manager, that Leson might harm him because he attended the protest. Webber requested to meet with managers to discuss his fears. When Brumfield proposed instead that Webber meet with Leson Rebowe, Webber refused, absent assurances from management that Leson would not carry a gun. Brumfield allegedly discouraged Webber from making this demand, saying, "You are not about to do this, or this will be your last day working here." No individual meeting ever occurred.

In the following days, public backlash to Leson's social media posts led Lisa Rebowe to terminate her son's employment and issue an apology on behalf of LCC. On June 9, 2020, she met with employees to address the controversy and provided a forum for workers to express their concerns.

No. 24-30637

Webber missed work that day and did not attend this meeting, but he emailed Colson to request time off, again expressing his safety concerns. Colson granted this request.

A week later, Colson contacted Webber to ask when he would return to work. Webber refused to return until he spoke with Lisa Rebowe. On June 18, Lisa spoke with Webber and told him that Leson had been terminated. Webber returned to work on June 23. On July 2, Leson briefly stopped by LCC to return a dealership car that had been assigned to him. Leson and Webber did not interact, but Webber witnessed Leson dropping off the car and left work, texting Colson that he could not stay at LCC with Leson present. Colson gave Webber the rest of the day off. Webber did not return to work in the following weeks and did not contact LCC or Colson during his absence. After missing more than two weeks of work, Webber was terminated on July 20.

In November 2020, Webber filed an EEOC charge against LCC, but the EEOC declined to act and informed Webber of his right personally to sue his former employer. Webber followed with this action in April 2022. In his complaint, Webber alleged that he was subject to a racially hostile work environment at LCC and that his July 2020 discharge was discriminatory, in violation of Title VII.[1] He also alleged employment discrimination and tort claims under Louisiana law. In September 2024, the district court granted summary judgment to LCC, finding that Webber failed to substantiate his claims of workplace harassment or wrongful termination under Title VII.

---

[1] Webber also appears to articulate a Title VII retaliation claim on appeal. He did not plead a retaliation claim in his complaint, but he contends that the presence of such a claim should have been obvious from the allegations in his filings before the district court and the EEOC. Because this claim was not previously pled, it cannot be considered for the first time on appeal. *See Leverett v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999).

The district court dismissed Webber's state law claims as time-barred, as more than a year had passed between his termination and filing suit. Webber appeals the court's summary judgment.

He also appeals the sanctions imposed by the district court on his counsel, J.P. Gorham, for a series of lapses during discovery. First, Gorham failed to appear at multiple scheduling conferences in 2023. When depositions began in April 2024, the parties disputed whether the corporate deposition of LCC would be in New Orleans, as previously understood, or in Baton Rouge, at Gorham's suggestion. Gorham did not ask the court to decide the issue and failed to appear at the deposition in New Orleans. This dispute resolved in favor of LCC, but Webber moved for sanctions, contending that defense counsel had acted in bad faith by opposing relocation of the deposition and had also acted improperly during the deposition of Leson Rebowe. Oral argument on this motion was set in May 2024, but Gorham again failed to appear.

The magistrate judge denied Webber's sanctions motion and instead ordered Gorham to show cause as to why she should not be sanctioned. Webber then filed a further "motion" objecting to this order, leading LCC to request sanctions against Gorham. At the show cause hearing in June 2024, the magistrate judge treated the objections motion as a motion for reconsideration of Webber's earlier sanctions motion. The magistrate judge overruled Gorham's objections and imposed sanctions of $3,500 against her. The district court upheld the sanctions, and Webber now contests that ruling.

## II.

We consider first the grant of summary judgment on Webber's Title VII and state law claims. We review a grant of summary judgment *de novo*. *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 380 (5th Cir. 2018). Summary judgment is proper "if the movant shows that there is no genuine

No. 24-30637

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine [dispute] of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Roberson-King*, 904 F.3d at 380. We review the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in favor of that party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). Summary judgment is proper if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.

Webber first presses a claim for racially discriminatory workplace harassment. "A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To establish a *prima facie* case of racial harassment, Webber needs to demonstrate that (1) he belongs to a protected group, (2) he experienced unwelcome harassment, (3) this harassment was based on race, (4) the harassment affected a term, condition, or privilege of employment, and (5) LCC knew or should have known of the harassment and failed to take prompt remedial action. *See id.*

The district court, without addressing the first three factors, concluded that any harassment Webber experienced did not rise to the level of affecting "a term, condition, or privilege of employment." *Id.* It is well-established that harassment "must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In identifying "extreme" harassment, we weigh "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or merely an offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[I]solated incidents (unless extremely serious) will not amount to [workplace harassment] charges that can survive summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (internal quotations omitted). Even "an epithet which engenders offensive feelings . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023). "[S]econd-hand harassment is less objectionable than harassment directed at the plaintiff." *Id.*

As evidence of a hostile work environment, Webber points to Leson Rebowe's privileged status as the son of the dealership's operator, and he relies on a Ninth Circuit opinion, *Okonowsky v. Garland*, 109 F.4th 1166 (9th Cir. 2024), for the proposition that social media's "pervasive" nature intensified the harassment he experienced. Webber further asserts that LCC's management contributed to a discriminatory environment by discouraging him from demanding that Leson Rebowe not carry a gun into a meeting with Webber.

Summary judgment was appropriate on this claim. Webber alleges no harassment at LCC, nor any personal or directed harassment affecting his work. He has never alleged any negative in-person interactions with Leson Rebowe, or that they even worked together. While the posts themselves were abhorrent and involved threats of physical violence, Webber concedes that his participation in the protest was unknown to his coworkers at the time Leson wrote them, so they did not implicate or target Webber at all, even indirectly. Webber's reliance on *Okonowsky* is similarly misplaced: In that case, the plaintiff was subjected by a close coworker to months of sexually violent social media posts that directly implicated her. *Okonowsky*, 109 F.4th at 1178–84. By contrast, Webber alleges a single series of offensive posts that did not identify him, posted by a coworker with whom he never interacted.

Even if Webber found Leson's posts offensive, they fall far short of the extreme conduct this court has held to be actionable discriminatory workplace harassment. *See, e.g.*, *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (frequent racial and religious insults by coworkers); *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 400–04 (5th Cir. 2021) (frequent use of racial slurs by a supervisor).

Webber's assertion that Brumfield amplified Leson Rebowe's racist behavior by threatening termination is similarly unavailing. Even assuming that threat was genuine and that Brumfield had any control over Webber's employment, a threat of termination, absent more, does not create a hostile work environment. *See Credeur v. Louisiana ex rel. Off. of the Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017); *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 880 (5th Cir. 2010). Moreover, Webber does not allege that he was discouraged from pursuing his complaints with management, and indeed he did so, with Colson and Lisa Rebowe, during his initial absence.

Because Webber fails to substantiate at least one of the elements of his hostile workplace harassment claim, summary judgment was proper.

**B.**

Webber also asserts a claim for wrongful termination, contending that his discharge resulted from his complaints about Leson Rebowe's social media posts rather than his lengthy unexcused work absence. "An ordinary wrongful discharge claim has two basic elements: discrimination and discharge." *Green v. Brennan*, 578 U.S. 547, 555–56 (2016). A plaintiff asserting wrongful discharge under Title VII "must first establish a *prima facie* case, which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his] protected group or was treated less

favorably than other similarly situated employees outside the protected group." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (internal quotation omitted). In making this showing, Webber may rely on either direct or circumstantial evidence of discrimination. *See Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018).

"Direct evidence of discrimination proves the existence of [discriminatory intent] without any inferences or presumptions." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019) (internal ellipses and brackets omitted); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Webber contends that the proximity in time between his complaint and firing constitutes such direct evidence. But it is undisputed that Webber was fired after missing more than two weeks of work without explanation, such that LCC had ample justification to fire him. *See Hudson v. Lincare, Inc.*, 58 F.4th 222, 232 (5th Cir. 2023) ("Failure to perform job tasks is a classic example of a legitimate reason to fire an employee"). Mere temporal proximity, then, does not amount to direct evidence of discrimination in this case; the timing of Webber's discharge would at best raise only an inference of discriminatory animus. *Cf. McMichael*, 934 F.3d at 456; *see also Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). Nor can Webber plausibly assert that Lisa Rebowe's public apology is direct evidence of discrimination, as any discriminatory intent would be flatly contrary to the stated motivation for her making it. *See McMichael*, 934 F.3d at 456.

Lacking direct evidence of discrimination, Webber must rely on circumstantial evidence, which we assess through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346 (5th Cir. 2013). First, as detailed above, Webber must substantiate a *prima facie* case of discrimination. *Harrison*, 82 F.4th at 429. If he does so, the burden shifts

to LCC to provide a legitimate, non-discriminatory reason for Webber's firing. *See McDonnell Douglas*, 411 U.S. at 802. If such a reason is provided, then Webber bears the burden of showing that the offered reason is merely pretextual, disguising discriminatory motives. *Id.* at 804.

Even if, as the district court assumed, that Webber has stated a *prima facie* case of discrimination, LCC has presented a legitimate reason for firing him: He missed more than two weeks of work without explanation.[2] *See Hudson*, 58 F.4th at 232; *see also Trautman v. Time Warner Cable, Tex., LLC*, 756 F. App'x 421, 428 (5th Cir. 2018) ("[A]s should go without saying, an employee's failure to show up for work is a legitimate reason for firing her." (citations omitted)). Webber counters that LCC's reason for termination was pretextual. The evidence he offers for this assertion is that (1) he was not granted an individual meeting with managers to discuss his concerns, (2) LCC offered inconsistent explanations for the discharge of Leson Rebowe, and (3) Leson was not properly disciplined for his online behavior.

First, the fact that Webber was not granted an individual meeting with managers to discuss his concerns—the only personal treatment he offers as evidence of pretext—does not move the needle. LCC management convened a meeting of employees to discuss their concerns, but Webber missed work that day. In addition, Webber was allowed time off, had a personal call with the dealership's operator, and Leson Rebowe was promptly terminated. Employers need not take all remedial steps requested by a plaintiff; they must simply take "prompt remedial action that is reasonably calculated to end the harassment." *Hudson*, 58 F.4th at 230; *see*

---

[2] The parties appear to dispute whether Colson contacted Webber during his second extended absence, and the district court did not address this question. But any dispute over this point is not material, as it is undisputed that Webber missed more than two weeks of work without explanation or prior approval.

*also Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 615–16 (5th Cir. 1999); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262–63 (5th Cir. 1999); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992). The fact that no further meetings were organized, with Webber individually or otherwise, does not suggest that Webber's firing was motivated by anything other than absenteeism.

Next, Webber discerns pretext in alleged inconsistent explanations for Leson Rebowe's firing. Before the EEOC in 2021, LCC attributed Leson's termination to his violation of LCC's rules for employee conduct; a form filed with the Louisiana Workforce Commission (LWC) in June 2020 lists the reason simply as "reduction of workforce." While inconsistent explanations for a discharge may indicate pretext, this inference would be relevant if such shifting explanations concerned *Webber's* firing, not Leson's. *See Musser v. Paul Quinn Coll.*, 944 F.3d 557, 564 (5th Cir. 2019). LCC has consistently explained that Webber was fired for missing work. And even if the reasons for Leson's firing were relevant, any inconsistency between LCC's one-line explanation on LWC's form and its more detailed explanation in the EEOC proceeding—which otherwise accords with LCC's publicly-stated explanation for Leson's discharge—falls well short of the glaring discrepancies this court has recognized as evidence of pretext. *See Caldwell v. KHOU-TV*, 850 F.3d 237 (5th Cir. 2017); *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002); *see also Bhadauria v. HCL Am., Inc.*, 2019 WL 426478, at *3 (N.D. Tex. Feb. 4, 2019) (inconsistencies must be "so great that it [is] entirely reasonable to find the proffered explanation to be no explanation at all").

Webber also contends that Leson Rebowe was inadequately disciplined, which he says shows pretext on LCC's part as well. He asserts that Leson was not truly terminated in June 2020 but was instead placed on "leave" before being rehired months later. But Webber's only evidence to support this is the affidavit of another former LCC employee, Terrance

Milligan, which was not timely produced in discovery and thus not properly considered on appeal. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131–32 (5th Cir. 1992). This assertion also conflicts with the summary judgment record, including Webber's own evidence that Leson's termination was reported to the LWC in June 2020. Regardless, whether LCC placed Leson on leave or rehired him, employers need not impose the harshest punishments on offending employees; they need only act to end the harassment. *See Landgraf*, 968 F.2d at 430. And differential treatment of two employees who were not similarly situated does not indicate that the decision to fire Webber was pretextual. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." (citation omitted)); *see also Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (stating that plaintiff must show that "employment actions 'were taken under nearly identical circumstances,' including . . . most importantly, that the 'conduct that drew the adverse employment decision was nearly identical.'" (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)) (cleaned up)).

The record also indicates that the same manager, Timothy Colson, both hired and fired Webber, and Webber does not dispute this fact. When one actor both hires and fires a member of a protected class, an inference may be drawn that discrimination did not inform the firing. *See Allen v. U.S. Postal Serv.*, 63 F.4th 292, 304 (5th Cir. 2023); *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 n.16 (5th Cir. 2000) ("The 'same actor' inference arises when the individual who allegedly discriminated against the plaintiff [also] hired the plaintiff and gives rise to an inference that discrimination was not the motive behind plaintiff's termination."). With no evidence to the contrary, we may safely infer that Colson's firing Webber was not motivated by discriminatory intent.

No. 24-30637

In sum, Webber presents no evidence of pretext in his firing; if anything, undisputed evidence supports LCC's stated reason for terminating him. Summary judgment was therefore appropriate on his wrongful termination claim.

## C.

The district court dismissed Webber's state law claims for racial discrimination, retaliation, and intentional infliction of emotional distress as time-barred. Those claims are all subject to a one-year prescriptive period beginning upon Webber's termination in July 2020. LA. CIV. CODE art. 3492 (2022), *repealed by* 2024 La. Acts 423, § 2; *but see* LA. REV. STAT. § 23:303(D).[3] Webber does not dispute that this period began to run in July 2020. Instead, in the district court, he embraced two theories to avoid the time bar: the equitable doctrine of *contra non valentem*[4] and a "continuing tort" theory. He appears to have abandoned the former on appeal, and only briefly renews the latter.

---

[3] In 2024, the prescription period for delictual actions in Louisiana was extended to two years, but this amendment only applies prospectively. *See* 2024 La. Acts. 423 §§ 2–3. Thus, the one-year prescription period continues to govern Webber's claims.

One other wrinkle: The prescriptive period for employment discrimination claims pauses during EEOC proceedings, but this suspension lasts six months at most. *See* LA. REV. STAT. § 23:303(D). So the maximum prescriptive period for Webber's employment discrimination claim was eighteen months, such that his April 2022 filing was still untimely.

[4] *Contra non valentem* is an equitable doctrine in Louisiana law that tolls prescription periods from running against plaintiffs unable to act on a claim. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021) (citation omitted). This doctrine only applies in four "exceptional circumstances": (1) when there is a legal reason a court could not act, (2) a contractual or procedural barrier prevents the plaintiff's action, (3) a defendant's actions prevented the plaintiff from acting, or (4) the plaintiff was reasonably unaware of his cause of action. *Id.* Webber previously offered that he was "incapacitated" by fear, leading him to delay filing his state law claims. The district court rejected this theory, and Webber does not re-urge it on appeal.

Under Louisiana's "continuing tort" doctrine, prescriptive periods are extended when there is at least one act of tortious conduct in the year immediately before filing suit. *See Bustamento v. Tucker*, 607 So. 2d 532, 539 (La. 1992). The only such conduct alleged by Webber was the issuance of a subpoena by LCC to Webber's current employer in the present litigation. But a "continuing tort is occasioned by [continual] unlawful acts, not the continuation of the ill effects of an original wrongful act." *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1003. Webber offers no argument that the subpoena of his current employer was unlawful; he merely speculates that it has harmed his current working relationship. Because Webber fails to allege any tortious behavior that would allow him to extend the one-year prescriptive period, the district court did not err in granting summary judgment to LCC on Webber's state law claims.

## III.

As to the sanctions issues raised by Webber, the record is fairly involved (or "tortured," to borrow the magistrate judge's terminology). But at bottom, Webber contests the denial of his sanctions motion against defense counsel, the sanctions imposed on his own counsel, and the magistrate judge's treatment of his objections "motion" as a motion for reconsideration. We review sanctions imposed by a district court for abuse of discretion. *In re Mole*, 822 F.3d 798, 801 (5th Cir. 2016). An abuse of discretion occurs if a "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* Conclusions of law by the magistrate judge are reviewed *de novo*. *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987).

### A.

First, we review the district court's denial of Webber's motion for sanctions against defense counsel. "Of course the district court's decision

not to impose sanctions is accorded great deference." *Mennella v. Kurt E. Schon E.A.I., Ltd.*, 979 F.2d 357, 365 n.44 (5th Cir. 1992).

To bolster his sanctions motion, Webber first deflects blame for the missed April 2024 LCC deposition, positing that defense counsel should have known that the deposition would be held in Baton Rouge and that defense counsel's last-minute motion for a protective order was a bad faith attempt to delay the deposition. But this version of events is belied by the record. The magistrate judge confirmed that the deposition should have been noticed only in the Eastern District of Louisiana. Indeed, this was apparently the initial understanding of the parties, and defense counsel promptly (and repeatedly) objected when Webber's counsel noticed the deposition in Baton Rouge. Webber's conclusory accusations of bad faith are not sufficient to counterbalance the actual conduct by the parties at the time.

The other basis for sanctions, according to Webber, is defense counsel's conduct during the deposition of Leson Rebowe. Again, Webber's support for this assertion is slim. He points to the number of objections made by counsel and counsel's disruptive "posture" and "tone," and he suggests that defense counsel improperly "coached" Leson's answers. Reviewing the deposition transcript, we see nothing to suggest clear error in the magistrate judge's conclusion that no sanctionable conduct took place, especially considering the high bar for sanctioning deposition conduct. *See Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 294 (5th Cir. 1997) (sanctioning a lawyer who used violent threats and profanity during a deposition). Thus, the district court did not abuse its discretion in upholding the magistrate judge's denial of Webber's sanctions motion.

## B.

Webber also contests the sanctions imposed on his counsel, maintaining that any misconduct was unintended and that the $3,500

sanction ordered by the magistrate judge was needlessly punitive. Webber provides no support for this position, beyond stating that any mistakes were made in good faith and emphasizing a supposed double standard in the magistrate judge's treatment of the two litigants' attorneys. But it is undisputed that Webber's counsel missed at least three court appearances and, as the district court noted, Webber's various motions relitigated issues that had already been decided or declared moot. Based on counsel's conduct, the determination that sanctions were merited was hardly an abuse of discretion.

Webber also contends that $3,500 is an excessive amount, speculating that this penalty was imposed solely for missing the May 2024 show cause hearing. However, the magistrate judge made clear that the sanctions reflected a lengthy series of missed appearances, baseless accusations against defense counsel, and the burden on both the court and LCC of handling continued frivolous filings. And Webber provides no evidence that the $3,500 amount was inflated. We have generally "affirmed a district court's determination that the least severe sanction . . . is the imposition of reasonable attorney's fees and expenses." *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). Webber provides no reason to second-guess the sanctions imposed here, and the district court did not abuse its discretion in affirming them.

## C.

The magistrate judge treated Webber's May 2024 "motion" objecting to the show cause order as one for reconsideration of Webber's earlier motion for sanctions. According to Webber, this reclassification deprived him of the chance to "procedurally litigate" the motion, presumably by proffering new evidence to bolster his earlier, unsuccessful motion for sanctions against defense counsel. Yet the only evidence Webber

proffered was a brief clip of soundless video footage excerpted from Leson Rebowe's deposition, which existed at the time of Webber's sanctions motion but was not then presented to the magistrate judge.

Webber's motion, while ostensibly responding to the court's show cause order, in substance relitigated his earlier sanctions motion, recounting the issues of LCC's corporate deposition scheduling and defense counsel's deposition conduct. The new motion also contained unsupported attacks on the fairness of the proceedings and the professionalism of both defense counsel and the magistrate judge. Because its content effectively revisited the merits of the prior motion for sanctions, the magistrate judge permissibly treated the objections motion as one for reconsideration of that earlier motion. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

To prevail on a motion for reconsideration, Webber needed to show "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Here, Webber made no attempt to argue any new legal grounds and only proposed to offer evidence that was available at the time of his earlier motions for sanctions. Accordingly, the district court did not err in affirming the magistrate judge's reclassification and subsequent denial of Webber's motion.

\* \* \*

Webber fails to allege any issue of material fact that would permit his Title VII and state law claims to survive summary judgment. He further fails to show any error, much less any abuse of discretion, in the magistrate judge's handling of sanctions. The judgment of the district court is

AFFIRMED.